FIRST STATE BANK OF TEAGUE v. COX.

(Court of Civil Appeals of Texas. Dallas. July 1, 1911.)

1. VENDOR AND PURCHASER (§ 260*) — VEN-DOR'S LIEN—RELEASE OF PART OF MORT-GAGED LAND—EFFECT.

Defendant, the holder of a prior vendor's lien notes upon several lots, with notice that a bank had a mortgage upon a part of these lots, released two of the lots not covered by the bank's mortgage. *Held,* that defendant's lien upon the lots included in the mortgage was discharged to the extent of the value of the lots released.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 670; Dec. Dig. § 260.*]

2. MORTGAGES (§ 290*)—LIENS (§ 15*)—SALE OF PART OF MORTGAGED LAND — LIABILITY OF LAND.

Where land subject to a lien or mortgage is sold in parcels, the parcels are chargeable to pay the debt in the inverse order of their alienation.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 791–805; Dec. Dig. § 290;* Liens, Cent. Dig. § 20; Dec. Dig. § 15.*]

3. LIENS (§ 15*)—RELEASE OF PART OF LAND —SUBSEQUENT INCUMBRANCERS.

A lienholder cannot release part of the land subject to his lien, to the damage of one who purchased or secured an incumbrance on another part of the land prior to the release.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 20; Dec. Dig. § 15.*]

4. VENDOR AND PURCHASER (§ 260*) — VEN-DOR'S LIEN—RELEASE OF PART OF LAND HOMESTEAD.

Defendant had a vendor's lien upon a number of lots, and a bank had a mortgage upon a part of them. Defendant released two lots not included in the bank's mortgage. *Held,* that the fact that the lots released were the homestead of the purchaser did not prevent the release from inuring to the benefit of the bank.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 670; Dec. Dig. § 260.*]

5. VENDOR AND PURCHASER (§ 265*) — VEN-DOR'S LIEN—NATURE OF LIEN.

One having a vendor's lien upon land is not entitled to a personal judgment against a subsequent incumbrancer, the land alone being liable for the vendor's lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 700–712; Dec. Dig. § 265.*]

6. TRIAL (§ 393*) — TRIAL BY COURT — FIND-INGS OF LAW AND FACT.

The failure of the court in an action tried without a jury, to reduce his findings of law and fact to writing when requested by the losing party is reversible error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 922; Dec. Dig. § 393.*]

Appeal from District Court, Freestone County; H. B. Daviss, Judge.

Suit by the First National Bank of Teague against E. A. Cox. From a judgment for defendant, both in the suit in question and upon his cross-action, plaintiff appeals. Reversed and rendered.

D. T. Garth, for appellant. Wroe & Gep-pert, for appellee.

TALBOT, J. Appellant brought this suit against the appellee to remove a cloud from the title of the lots described in its petition. The petition alleges, in substance, that on or about the 9th day of July, 1907, the Valley Route Townsite & Loan Company conveyed to J. G. Hall lots Nos. 13 to 24, both inclusive, in block 53, in the city of Teague, Freestone county, Tex.; that the consideration of this conveyance was $191.25 cash and three promissory notes of $191.25 each, falling due, respectively, July 9, 1908, July 9, 1909, and July 9, 1910; that in said conveyance and notes the vendor's lien was expressly retained on the land sold to secure the payment of said notes; that at the maturity of said first-mentioned note the same was paid by the said J. G. Hall; that thereafter on May 8, 1909, the said Hall, to secure the payment of a note of $4,100, executed and delivered by him to the appellant, the First State Bank of Teague, made, executed, and delivered to W. A. Mixon as trustee his certain deed of trust on lots Nos. 13, 14, 17, 18, and 21 in said block No. 53; that said deed of trust was filed for record the 28th day of May, 1909; that on February 19, 1910, the said J. G. Hall and wife conveyed lots Nos. 15, 16, 19, 20, and 22 in said block No. 53 to appellee; that on May 10, 1910, the said Hall and wife conveyed the remainder of said lots in said block, being 23 and 24, upon which they had established their homestead, to W. L. Mier for $825; that said note of $4,100 was not paid, and, at the request of appellant, Mixon, the trustee in said deed of trust, sold said last-named lots on the 5th day of July, 1910, in accordance with the terms of said deed, the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

appellant becoming the purchaser at said sale for $1,700, and receiving a deed for said lots Nos. 13, 14, 17, 18, and 21 in block No. 53, in due form. It is further alleged that on May 16, 1910, the Valley Route Townsite & Loan Company, by an instrument in writing, transferred to appellee the last two purchase-money notes described in said company's deed to the said J. G. Hall for said lots conveyed by said deed; that after appellee became the owner and holder of said two vendor's lien notes, and on, to wit, May 17, 1910, with full notice and knowledge that appellant held the deed of trust mentioned on said lots 13, 14, 17, 18, and 21 in block 53, executed and delivered to the said J. G. Hall for the use and benefit of the said W. L. Mier a release of the vendor's lien, which had been reserved on all of said lots from 13 to 24, both inclusive, on the said lots Nos. 23 and 24 sold to Mier; that said lots 23 and 24, relieved of the lien to secure the payment of said two notes, were and are of value more than sufficient to pay off and satisfy the entire amount due on said notes. The defendant answered, and, by way of a cross-action, set up his purchase and ownership of the two vendor's lien notes referred to in plaintiff's petition, his purchase from Hall of lots 15, 16, 19, 20, and 22, and averred that on May 10, 1910, the said Hall and wife by their deed duly executed, sold and conveyed to the said W. L. Mier said lots 23 and 24 in said block 53; that said lots 23 and 24 at the time of their conveyance to Mier and for a long time prior thereto constituted the homestead of the said Hall and wife and were incumbered with the lien reserved to secure the payment of said two notes. That after the purchase of said notes by appellee and upon the payment by the said W. L. Mier of the proportional amount due upon said vendor's lien notes to defendant he executed and delivered to said W. L. Mier a release of the vendor's lien as against said lots 23 and 24. Defendant Cox prayed that he have judgment foreclosing his vendor's lien against lots 13, 14, 17, 18, and 21, in block 53, which had been bought by appellant, for the proportional amount due on said lien notes, for an order of sale, costs of suit and general relief. To this answer the plaintiff bank replied with a general denial, and specially pleaded that the property sold to Mier was primarily liable for the payment of said lien notes, and was of value sufficient to more than pay said notes; that the defendant, Cox, by releasing the lien on said lots, estopped himself from holding plaintiff's property or any part thereof for the payment of said notes, and prayed that said lien be canceled and held null and void as to plaintiff's said lots. The case was tried by the court, without a jury, and resulted in a personal judgment in favor of the defendant against the plaintiff for $189.40, and a foreclosure of the lien, for that amount, on plaintiff's lots. From this judg-

ment the plaintiff appealed. The evidence was sufficient to sustain the material allegations of the plaintiff's petition.

[1] Did the release by appellee, Cox, of the lots conveyed to W. L. Mier from the lien of the notes upon which he acquired judgment have the effect of releasing also the lots purchased by appellant under its deed of trust from the lien of said notes? We think it did. As said by this court in the case of Watson v. Vansickle, 114 S. W. 1160, it seems to be well settled that if a mortgagee or other lienholder releases part of the land or premises upon which his lien exists to the prejudice of a subsequent incumbrancer or purchaser, with notice of the subsequently acquired right, his release will operate as a discharge of his lien to the extent of the value of the land released.

[2] It is a well-established principle applied by courts of equity in marshaling securities, that where land subject to a lien is divided by its owner into parcels, and sold to different persons at different times, the parcels are chargeable to pay the debt in the inverse order of their alienation, and, in the language of our Supreme Court, "from it results the further proposition that if the lienholder, with knowledge of the facts, release from his lien a tract thus made primarily chargeable, those liable after it are also held to be released so far, at least, as may be found necessary to prevent injury to those purchasing them." Vansickle v. Watson (Sup.) 123 S. W. 112. In regard to this principle of marshaling securities it is also said: "The junior creditor having the right under the doctrine of marshaling to obtain directly or indirectly the benefit of a security upon which the senior creditor has a lien, but to which he himself has otherwise no right to resort, it is the duty of the paramount creditor when he has knowledge of the junior creditor's status, to preserve both securities unimpaired, in order that the junior creditor's rights in either fund may not be rendered unprofitable or valueless. Consequently, if the paramount creditor, with knowledge of the other's rights, either willfully or negligently releases or discharges his lien upon the security available to himself alone, and thus renders subrogation in favor of the junior creditor impossible, he thereby loses his lien upon the doubly charged fund to the extent of the value of the security that he has released. In other words, the release of the singly charged fund operates pro tanto as a release of the doubly charged fund from the lien of the paramount incumbrance. So if a mortgagee of two or more tracts of land releases the property on which his mortgage is the exclusive lien, such property being adequate security, his lien on other tracts will be postponed to that of the junior mortgagee on such lands." Am. & Eng. Ency. of Law, vol. 19 (2d Ed.) p. 1267; Cogswell v. Stout, 32 N. J. Eq. 240; Cheesebrough v. Millard, 1 Johns. Ch. (N. Y.) 409, 7 Am. Dec. 494; Guion v. Knapp, 6 Paige (N. Y.)

35, 29 Am. Dec. 741. The facts render applicable these principles in the present case. The appellee, as the owner and holder of the vendor's lien notes in question, occupies no more favorable position than the Valley Route Townsite & Loan Company, the original payee of said notes, would occupy, had it released itself the lien of said notes on lots 23 and 24, sold to Mier, and were here suing on said notes and asking for a foreclosure of said lien on the lots owned by the appellant. He purchased the notes and executed the release to Hall for the benefit of Mier, with both actual and constructive notice at the time of the existence of appellant's deed of trust on the lots claimed by it. W. A. Nixon testified: "The notes which the Valley Route Townsite & Loan Company transferred to Cox passed through our bank. I think the transfer was made some time along about the middle of May. The notes amounted to $343 and some cents. I had a conversation with Dr. Cox about those notes a short time before the transfer was made. He said he had done some practice for Mr. Hall and that he was going to take some lots to pay the bill, and asked me if the bank had a mortgage on any of these lots, and I told him that we had a mortgage on lots Nos. 13, 14, 17, 18 and 21 in block 53, in the town of Teague. Mr. Hall did not pay the $4,100 note which he gave the bank, and I made the sale of the lots. I published the notices of the sale."

[3] It was not essential, as contended by appellee, to the bank's right to invoke the application of the principles relied on by it, that it have and hold the title to the lots in controversy. The rule applies to a subsequent incumbrancer as well as to a subsequent purchaser. Vansickle v. Watson, supra; Id., 114 S. W. 1160. The lots sold to W. L. Mier, and which were by the appellee released from the lien of the notes sued on, were of value more than sufficient to pay off and satisfy the entire amount of said notes.

[4] Of such value, too, were lots 15, 16, 19, 20, and 22, which were also liable for the payment of said notes, purchased by appellee from Hall and owned by him at the time said release was executed. The fact that J. G. Hall and wife established their homestead on lots 23 and 24 after their purchase from the Valley Route Townsite & Loan Company, does not alter the case. Am. & Eng. Ency. of Law, vol. 19 (2d Ed.) p. 1271. It would seem to follow that the lands of appellant were discharged from the lien of appellee's notes and that judgment to that effect should have been rendered. This view renders it unnecessary to discuss the other assignments.

[5] Of course, the court erred in rendering a personal judgment against the appellant for the sum of $189.25. The appellant was in no event liable personally for any part of the notes sued on. This appellee concedes, and were it the only error the judgment might be reformed and affirmed.

[6] It may also be said, touching appellant's fifth assignment of error, that it is well settled that where the losing party in the district court requests the presiding judge, who has tried the case, without the intervention of a jury, to reduce his findings of fact and law to writing, and this is refused or neglected to be done, without any fault of such party, and the point is preserved by a proper bill of exception, the same constitutes reversible error.

The judgment of the court below denying to appellant the relief sought by him, and awarding to appellee a recovery against the appellant for the sum of $189.40, and foreclosing the vendor's lien on appellant's property for the payment of said sum is reversed and set aside, and judgment is here rendered in favor of appellant that appellee take nothing by reason of his cross-action; that appellant's said lots 13, 14, 17, 18, and 21 in block 53 in the city of Teague, be discharged from the lien reserved to secure the payment of the two notes upon which said cross-action is based, and that appellee be taxed with the costs of the district court and of this court.

Reversed and rendered.